IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN L. TILLEY,

      Plaintiff,                        No. CIV S-05-0228 LKK GGH PS

   vs.

PETER WEISER, et al.,

      Defendants.            <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff, proceeding in this action pro se, was referred to this court by Local Rule 72-302(c)(21). On November 23, 2005, this court granted plaintiff's request to proceed in forma pauperis under 28 U.S.C. § 1915. On that same day, this court dismissed plaintiff's original complaint with leave to file an amended complaint no later than December 22, 2005. The court subsequently granted the plaintiff an extension of time until February 3, 2006, to file his amended complaint. On February 2, 2006, plaintiff filed a document entitled "Points," that, given its timing and similarity to the original complaint, appears to be an amended complaint. On April 3, 2006, two months after the deadline imposed by this court, the plaintiff filed a document entitled "Amended Complaint."

        The amended complaint fails to comply with the notice pleading requirements of the Federal Rules of Civil Procedure and must therefore be dismissed. Federal Rules of Civil

1

Procedure 8 sets forth general rules of pleading for the Federal Courts. Rule 8(a) requires complaints to include: (1) the grounds upon which the court's jurisdiction rests; (2) a short and plain statement of the claim showing entitlement to relief; and (3) a demand for relief. The amended complaint does not meet these requirements.

The plaintiff's allegations essentially repeat those made initially in his original complaint. As currently written, the plaintiff's "Points," and "Amended Complaint" provide a morass of legal arguments which are either off-point, completely irrelevant, nonsensical. Most importantly, when comprehensible, his allegations fail to state any violation of Federal law.

In his amended complaint, the plaintiff includes the verbatim text of Article III of the Constitution, as well as the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Following each recital of the various amendments, the plaintiff provides a detailed historical analysis, passages of which, based upon their font, typeset, and off-colored hyperlinks, appear to be copied directly from textbooks or the internet. While informative, these passages do little to assist the complaint or detail the specific allegations of the plaintiff.[1] At no point during this history lesson does the plaintiff provide any details or analysis of the specifics of the complaint which would make the dozen pages of information relevant to the current matter.

The complaint continues by alleging violations of various statutes; including the Privacy Act, the "Computer Records Matching Act," 18 U.S.C. § 371 (Conspiracy to Commit Offense or Defraud the United States); and other various regulatory and policy violations relating to the plaintiff's dispute with the Department of Veteran's Affairs. At times, the plaintiff continues to provide detailed research into the statutes and their origins. However, despite his

---

[1] In their respective sections, the detailed historical analysis quotes Lord Camden's thoughts on the basis of the right to be free from unreasonable search and seizure; relies on the Magna Carta to justify the Fifth Amendment's protection of due process; reminds the court that drawing and quartering, embowelling alive, beheading, public dissecting, and burning alive are impermissible under the Eighth Amendment; details the development of Substantive Due Process since the The Slaughter-house Cases, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873); and defines "persons," "police power," and "liberty."

efforts, he fails to articulate a cognizable claim against any of the parties. While passionate and exhaustive, the plaintiff's allegations do not possess the detail and comprehensiveness necessary to provide the required notice to the defendants. As a result, the complaint fails to give fair notice to the defendants and does not state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).

Furthermore, the court is unable to determine a jurisdictional basis for this action. A federal court is a court of limited jurisdiction, and may adjudicate only those cases authorized by the Constitution and by Congress. See Kokkonen v. Guardian Life Ins. Co, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). U.S. Const. Art. III, § 1 provides that the judicial power of the United States is vested in the Supreme Court, "and in such inferior Courts as the Congress may from time to time ordain and establish." Congress therefore confers jurisdiction upon federal district courts, as limited by U.S. Const. Art. III, § 2. See Ankenbrandt v. Richards, 504 U.S. 689, 697-99, 112 S. Ct. 2206, 2212 (1992). Lack of subject matter jurisdiction may be raised at any time by either party or by the court. See Attorneys Trust v. Videotape Computer Products, Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

The basic federal jurisdiction statutes, 28 U.S.C. §§ 1331 & 1332, confer "federal question" and "diversity" jurisdiction, respectively. Statutes which regulate specific subject matter may also confer federal jurisdiction. See generally, W.W. Schwarzer, A.W. Tashima & J. Wagstaffe, Federal Civil Procedure Before Trial § 2:5. Unless a complaint presents a plausible assertion of a substantial federal right, a federal court does not have jurisdiction. See Bell v. Hood, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1945). A federal claim which is so insubstantial as to be patently without merit cannot serve as the basis for federal jurisdiction. See Hagans v. Lavine, 415 U.S. 528, 587-38, 94 S. Ct. 1372, 1379-80 (1974).

The amended complaint attempts to establish jurisdiction by naming an agency of the United States Government as a defendant, alleging violations of the Constitution, and improperly attempting to establish diversity jurisdiction. However, through the course of his

3

complaint, the plaintiff fails to adequately articulate the basis for each of these allegations and instead relies upon citations to the Privacy Act (5 U.S.C. § 552), the "Computer Matching Act," another statute addressing the confidentiality of medical records within the Department of Veteran's Affairs (VA) (38 U.S.C. 5101§1.576a), and various VA regulations and procedures (e.g., 38 C.F.R. 1.511(a)(3), VBA Publication 1605.1).  In many instances, the plaintiff simply reasserts his original complaint.  While difficult to discern the particulars of his allegations, it appears that the plaintiff is attempting to contest the use of his VA medical records by California authorities during the course of juvenile dependency proceedings.  Those proceedings resulted in an order adjudicating the plaintiff's stepchildren dependents of the court.[2]

Here, as in his original complaint, plaintiff alleges, among other things, that:  (1) the Department of Veterans Affairs improperly handled the request for release of his medical records; (2)  representatives of the court in California required his wife to divorce him and forced him to give up custody of two step children who had alleged abuse at the hands of the plaintiff and their mother; (3)  the unlawful disclosure of his medical records wrongfully made him "an unlawful subject to California law" in violation of the Fourteenth Amendment; (4) "Anthony Urquiza" made "libelous statements as to the criminal history" of the plaintiff; (5) the Sacramento County Department of Health and Human Services and its agents wrongfully used plaintiff's medical records; (6) Judge Charles Kobiashi wrongfully used plaintiff's medical records and related reports in ordering plaintiff's stepchildren dependents of the court; and, (7) that Attorney Peter Helfer also violated various laws in using plaintiff's medical records.

It appears from the facts in the complaint, that the plaintiff originally authorized release of his medical records.  The plaintiff now appears to regret that decision as those records

---

[2] The undersigned notes that plaintiff's ex-spouse, Kathy Tilley, has filed at least two complaints with this court seeking review of these dependency proceedings.  Portions of this complaint appear to be a reprise of the allegations made in those cases, both of which were dismissed by this court.  See Tilley v. Superior Court of the State of California, Case No. 2:01-cv-2277 and Tilley v. Superior Court of the State of California, Case No. 2:05-cv-0636.

4

1  contained information about his psychological condition.  The plaintiff attempts to argue that his
2  original authorization to release his medical records was somehow altered by California
3  authorities to permit release of his psychological records.  The plaintiff fails to understand that
4  those psychological records were likely contained in his medical files and offers no evidence in
5  his amended complaint to suggest that his psychological records might somehow be afforded
6  special protection.  See Manning v. Principi, 16 Vet.App. 534 (2002) (examining medical records
7  stored within the NYPD Psychological Services); Patton v. West, 12 Vet.App. 272 (1999)
8  (noting VA requirements for a well-grounded claim of a psychological impairment requires
9  "medical evidence" of a nexus between service and the impairment); Barnhill v. Brown, 5
10 Vet.App. 75 (1993) (reviewing finding of psychological disorder after examination of medical
11 records); Mingo v. Derwinski 2 Vet.App. 51 (1992) (finding a "lack of psychiatric diagnosis in
12 the service medical records").  As a result, given the apparent authorization by the plaintiff, it is
13 unclear if any unconsented to release of records has even occurred.
14         Assuming, arguendo, that the plaintiff did not authorize release of his
15 psychological records, the court assumes plaintiff's citation to 5 U.S.C. § 552 is intended as a
16 citation to 5 U.S.C. § 552a, which contains conditions of disclosure for documents maintained by
17 a government agency.  See  5 U.S.C. § 552a, the Privacy Act.  Furthermore, the court assumes
18 that the plaintiff's reference to the "Computer Matching Act" also refers to the Privacy Act as
19 there is no federal statute by that name and the Privacy Act defines and regulates the use of
20 matching programs that compare computerized records stored by Government Agencies.  5
21 U.S.C. § 552a(p).   The Privacy Act does not contain a broad prohibition on disclosure of agency
22 records, and in fact provides several circumstances in which disclosure is permitted, including
23 disclosures "to an instrumentality of any governmental jurisdiction within ... the United States"
24 or "pursuant to the order of a court of competent jurisdiction."   5 U.S.C. § 552a(b)(11).  Both of
25 these circumstances appear to apply to the scenario explained in the complaint, i.e., juvenile
26 dependency proceedings concerning plaintiff's stepchildren.

1       The court assumes plaintiff's citation to "38 U.S.C. 5101 § 1.576a" is in fact a
2 citation to 38 U.S.C. § 5701.  This statute is more relevant to the plaintiff's allegations insofar as
3 it establishes the confidential nature of Veterans' Benefits claims.  See 38 U.S.C. § 5701.
4 However, this statute does not establish a cause of action for the wrongful release of a veteran's
5 medical records.  In fact, the statute states in relevant part, that the "Secretary shall make
6 disclosure of such files, records, reports, and other papers and documents . . . in any suit or other
7 judicial proceeding when in the judgment of the Secretary such disclosure is deemed necessary
8 and proper."  38 U.S.C. § 5701(b)(5).
9       Plaintiff's multiple citations to VA Regulations and "VBA Publication 1605.1"
10 and alternatively to "VHA Publication 1605.1" simply restate portions of the regulation the
11 plaintiff believes are relevant, without explaining how those sections create a cause of action.
12 The plaintiff repeatedly claims that VA regulations require verification of any request for VA
13 records.  The law and the accompanying regulations state no such requirement.  In fact, VA
14 regulation 38 C.F.R. § 1.511(b)(1), much like the Privacy Act, permits disclosure of VA records
15 when consented to by the veteran or authorized by a valid court order.  Furthermore, the plaintiff
16 does not explain how these documents might provide a basis for this court's jurisdiction or
17 establish a federal cause of action.
18       The plaintiff appears from the facts of his complaint to have authorized the release
19 of his medical records.  None of the allegations or legal citations in the complaint provide a basis
20 for this court's jurisdiction, nor do they appear to establish a federal cause of action.  It simply
21 appears as if the plaintiff disagrees with the lawful decision of the VA to release his medical
22 records to a court of competent jurisdiction for use in a child custody proceeding that did not end
23 in his favor.  It is the plaintiff's obligation to state the basis of the court's jurisdiction in the
24 complaint, and the plaintiff has not done so.
25       Furthermore, the plaintiff's reliance on the 14th Amendment as a remedy to the
26 action by the California is misplaced and based upon a backward understanding of the

1  amendment. The plaintiff contends that California has no authority over him because he is a
2  citizen of Nevada. However, this is not the right that is protected under the 14th Amendment.
3  Since its initial shaping in The Slaughter-house Cases, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394
4  (1873), the Privileges and Immunities Clause of the 14th Amendment has been interpreted to
5  provide no substantive protection, but rather, simply requires that when a state affords protection
6  to its own citizens, it must necessarily provide them to citizens of other states.

7  In additional citations to the 14th Amendment, the plaintiff presses a theory of due
8  process, arguing that parents have the right to raise their children as they see fit. As noted in his
9  citations, prior to terminating any parental right, the state must provide fundamental fairness.
10 Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (Rehnquist, J.,
11 dissenting) . It appears from the complaint that the plaintiff's sole basis for alleging a violation
12 of any due process right is that because the originally thorough state custody procedure was not
13 adjudicated in his favor, the process afforded him by the California court was not fair. There is
14 no constitutional violation of the right to due process in this situation.

15 Finally, the plaintiff cites to Article III of the Constitution, as well as the Fifth and
16 Sixth Amendments of the Constitution. The plaintiff makes no factual assertions in his
17 complaint which implicate these provisions of the Constitution. To the extent that the plaintiff is
18 attempting to raise a claim questioning the legitimacy of the California court juvenile
19 adjudication with which the plaintiff objects, this court does not have jurisdiction to hear those
20 claims. See Dist. of Columbia Court of Appeals v. Feldman, 406 U.S. 462, 476, 103 S.Ct. 1303,
21 1311-1312 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 44 S. Ct. 149, 150 (1923).
22 "The district court lacks subject matter jurisdiction either to conduct a direct review of state court
23 judgment or to scrutinize the state court's application of various rules and procedures pertaining
24 to the state case." Samuel v. Michaud, 980 F. Supp. 1381 1411- 1412 (D. Idaho 1996). See also
25 MacKay v. Pfeil, 827 F.2d 540, 544-45 (9th Cir. 1987) (attack on state court judgment because of
26 substantive defense improper under Rooker-Feldman).

1   In addition to the jurisdictional defects, the plaintiff's complaint is also deficient
2 in that it fails to adequately state a cause of action.  The requirement in Rule 8 of a short and
3 plain statement means a complaint must include "sufficient allegations to put defendants fairly on
4 notice of the claims against them."  McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).
5 Again, the complaint contains only broad allegations against myriad defendants, and does not
6 contain allegations specific enough to put defendants on notice of any claims against them.  See
7 Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957); Richmond v. Nationwide Cassel
8 L.P., 52 F.3d 640, 645 (7th Cir. 1995) (vague and scanty allegations fail to satisfy the notice
9 requirement of  Rule 8); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202 (2d ed.
10 1990).  The complaint contains only conclusions about what the plaintiff believed happened, and
11 disagreements with the outcomes of prior judicial proceedings, none of which meet the necessary
12 elements of a complaint under the rules.

13   The plaintiff's most significant charge is that officials at the VA violated his
14 rights by releasing medical records to California state officials during the course of a juvenile
15 custody hearing.  Indeed, it is from this alleged misconduct that all of the other misfortunes in the
16 plaintiff's saga seem to stem.  The plaintiff contends that this release was improper as the request
17 for release of records was not verified by VA officials.  However, the plaintiff fails to articulate
18 how this release of information and lack of verification might create a cause of action.

19   Federal law does not impose a verification requirement.  The only requirement for
20 verification is stated in VBA Publication 1605.1, Section 7.   This publication permits
21 verification of requests from claimants by comparison of signatures and social security numbers.
22 Id. at (1). The plaintiff does not explain in his complaint how the process was not complied with,
23 simply concluding that his authorization to release medical records was tampered with and
24 verification did not occur in spite of the fact that his authorization apparently contained his
25 signature and social security number.
26 \\\\\

Furthermore, as stated in the VBA publication, requests for access to records from outside organizations need only comply with Federal law, i.e. the Privacy Act. As noted above, requests from courts of competent jurisdiction are sufficient to permit disclosure of agency records. The plaintiff cannot articulate how any law, regulation or procedure was violated.

An additional example further highlights the difficulties in plaintiff's complaint. In his allegations against Anthony Urquiza, the plaintiff states that the defendant made "libelous statements" about the plaintiff's criminal history. However, at no time in the complaint does the plaintiff identify what those libelous statements are. Conclusory allegations of misconduct that are similarly lacking in the detail and specificity required for a legally sufficient cause of action infect all areas of the plaintiff's complaint.

Because the plaintiff has not complied with the pleading requirements of Rule 8 by establishing jurisdiction and stating a cause of action, the amended complaint should be dismissed. Plaintiff has previously filed a complaint (No. Civ.S-05-0228) with this court setting forth virtually the same allegations. In both instances, plaintiff's attempt to launch a cause of action have been unsuccessful.

Accordingly, IT IS RECOMMENDED that this action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections

\\\\\
\\\\\
\\\\\
\\\\\

1  within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v.</u>
2  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED:  4/25/06

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:kr
Tilley228.ifp